Case No. 24-2357, Western District of Missouri. United States v. Joshua Nesbitt. Case No. 24-2382, United States v. Sean Burkholder. The federal nexus under Section 1512, and Mr. Klein, who represents Mr. Burkholder, will likely spend his time primarily on the severance point on behalf of Mr. Burkholder, an additional argument on the federal nexus. I'm, of course, prepared to answer any questions that the court may have on other issues, if the court so pleases. This case arises out of a witness murder, Your Honor, and it presents a narrow but critical jurisdictional question under 18 U.S.C. Section 1512. And that is whether the government proved the required federal nexus to justify the exercise of federal jurisdiction over a homicide. And this question is governed by two limits that the Supreme Court has imposed on 1512. And the first, under Arthur Anderson, is the defendant must contemplate a particular foreseeable proceeding which was federal at the time of the homicide. And second, it must be reasonably likely, at the time of the homicide, that the witness's communication would be to a federal law enforcement officer. Both problems are prosecuted in this case, and both limits are missing here, Your Honors. Arthur Anderson sets the official proceeding requirement, and Fowler sets the federal likelihood requirement. And every circuit, including this one, has enforced both cases. So, Arthur Anderson, in essence, sets out the requirement for official proceeding. It requires the defendant contemplate a particular official proceeding. It need not be pending at the time, and the defendant need not specifically know that it's federal, but it must be foreseen or foreseeable. Generalized obstruction or anxiety about investigation is insufficient. And that arises out of the language in Arthur Anderson that says it's quite another thing to say a proceeding not even be foreseen when the statute says that it need not be pending and the defendant need not have specific knowledge of the federal nature of it. What about the fact that this involved a firearm, the AR-15, I believe, and at least Mr. Burkhalter knew that at least with respect to another firearm that had been purportedly found in a vehicle he was allegedly connected to was possibly going federal. Is that enough to sort of have this appreciation that a firearm offense or an offense related to a firearm might go federal? It's not in this – the facts of this case, Your Honor, no. That's not enough. And so that's where we have to draw the distinction. I think the distinction's supported in the case law. Mr. Burkhalter was in a high-speed chase, wrecked the car, and there was a firearm in the vehicle. That was why, during his interrogation, he was taken into custody on a probation violation. He was sitting there. He was interviewed. That was why there was the presence of a federal task force officer, Mr. Wells, Detective Wells. He was looking specifically at that issue. Detective Wells was not present, interested in the homicide of Danny Dean in Raytown, Missouri. He was not investigating that. There was no federal investigation of that underway. There was only a Raytown investigation of that issue. And this pivots back to the case law, by the way. There's – I believe in Abdullahi, and I think that this panel is the same panel that presided over Abdullahi. It said, and I want to get the word right, contemporaneity, a contemporaneous federal investigation, if it's not the issue that's at issue in the case, is not enough. Right? A mere contemporaneity is not enough. What about that it was being – does it matter that it was being investigated by the state? There was no state charges, and I think in Abdullahi there was a state charge, which I think was an important factor there. It was an important factor there, but it was not dispositive, Your Honor. If I understand Abdullahi correctly, that case pivoted on the absence of a foreseeable federal proceeding. I believe Judge Straus' concurrence states that these cases usually arise in the context of a pending state charge, but I don't think that it was meant to rewrite Arthur Anderson in a way that did away with the requirement of a foreseeable federal proceeding. I mean, Arthur Anderson, there were no pending state charges, obviously. That case arose out of obstruction in the Enron matter. So I don't think that that's dispositive, Judge, but that's simply a way that these cases typically arise. It provides context. Here, the danger that we have, and I see I'm down to four minutes, and I don't want to – I want to be able to pivot to the idea of contact with a law enforcement officer, but I think there's a series of facts here that sort of support both the absence of a foreseeable federal proceeding and the absence of a reasonable likelihood that a contact would be made with a law enforcement officer. Both are built on a chain of inferences here that the government wants the court to indulge in, right? So for the government to satisfy Fowler, really, or Arthur Anderson, we have to know that Johnson, the murdered witness, would have come forward yet again with the information about the Dean homicide, even though he had already spoken to Kansas City officers. He refused to speak to Raytown officers. Raytown officers didn't follow up on the information given to the Kansas City detectives. They didn't even write reports memorializing Johnson's information until after he was killed, right? Next inference, if Johnson came forward again, that information would have been communicated to the Kansas City Police Department, even though the Dean murder was a Raytown investigation. Detective Wells would have – that would have been communicated to Detective Wells, who wasn't even a homicide detective. He was joint task force for firearms. Detective Wells would have acted on his interest and spoken to Johnson about the Dean homicide, even though the homicide had nothing to do with the federal gun cases that Wells was investigating, specifically the possession of the 40-millimeter pistol, which was not the murder weapon in this case. Detective Wells would have taken the information to an AUSA. An AUSA would have opened a case. It would have gone to a grand jury. Johnson would have been called before the grand jury. This is that series of inferences that just builds conjecture upon conjecture that's not allowed for purposes of either Fowler or Arthur Anderson in this case. And so why does this fail? That's not reasonable likelihood. That is a stack of assumptions, Judge. That's not foreseeability of a particular proceeding. At this moment, Mr. Burkhalter was in jail on a probation violation. All he could really see was a state case. And another important fact in this case, Judge, I think, is that when Mr. Burkhalter mentions – because this is something the government relies on – when Mr. Burkhalter mentions the feds to Mr. Nesbitt specifically, that word does not appear in any conversations between Mr. Nesbitt and Mr. Burkhalter until after Mr. Johnson was already murdered. Mr. Burkhalter may have had an awareness of a federal investigation of him that specifically related to a 40-caliber pistol, not the Dean homicide. And that's what he was talking about when he talked to Mr. Nesbitt. So the cases have a thread to them, Your Honors, that I think is important to keep in mind in deciding this case. And that is that at the time of the alleged conduct, the investigation of the Dean homicide was handled by state authorities. Raytown police, right? That's it. Those are the only people involved in the investigation of the Dean homicide. There was no active federal investigation of that homicide until much later. And there are cases that talk about this specifically. I think Snyder is a useful case on this issue. Before you run out of time, I'd like to talk to you a little bit about the conspiracy, if you're prepared to do that. I am. What evidence was there that the drugs that were stolen in this case, that were alleged to be stolen, were distribution amounts? That were stolen from Mr. Dean or that were stolen from Mr. Johnson or both? It sounds like there was an amount that was stolen from Mr. Johnson that was distributed amongst the perpetrators. I would use the word shared, Your Honor. Shared. Not necessarily distributed outside the conspiracy. I didn't see anything in the record on the quantity that was stolen from Mr. Dean, even though there seemed to be evidence he was a drug dealer. I'll put that in quotes. But what I'm trying to get at is, I see that there's an agreement, perhaps. There's evidence of an agreement to steal from or rob from drug dealers. And I think there's a third one that they're trying to raise money. But I guess I'm trying to figure out what the conspiracy to possess with intent or the conspiracy to distribute. Where's that predicate? Certainly, as to Mr. Nesbitt, I don't think that evidence exists. The evidence that exists as to Mr. Nesbitt was that he was sharing. Well, even if shared, if... Social sharing. Social sharing, yeah. I guess you've still got to have an agreement with others. I'm trying to piece all of this together. I can't piece it together, Your Honor. It seems sort of scattered. And I don't know what the magnet is that's pulling it all together to a conspiracy. That's what I'm trying to get at. Your Honor, you're making the argument that we made to the jury, frankly, on this case, and that is... It wasn't successful. It wasn't successful, but you're right, Your Honor. I mean, that's a sufficiency issue. Is conspiracy to rob a drug dealer somehow, can you say that that's then a conspiracy to possess with intent? I don't think you can draw that connection, Your Honor. Thank you. I'll cede the rest of my time to Mr. Klein. Thank you. Good morning. May it please the Court. My name is Eric Klein. I represent Sean Burkhalter in this criminal appeal. As Mr. Johnson said, I do plan to focus primarily on the severance issue. I would, hopefully not taking myself down a path that's going to eat up my time, would like to circle back to, just quickly, two things, Judge Kelly, that you raised. And I think both really kind of hit the nail on the head as far as two of the issues that we've raised, which is, one, the involvement of Mr. Burkhalter's knowledge that there is a possible federal investigation of that .40 caliber pistol that was recovered from the car. And as we said in our reply brief, there was a proper 1512 charge sitting there waiting for the prosecution for Mr. Burkhalter trying to get this person who was the passenger in that car to take the rap for that gun. And if that had been charged, I don't think we'd be up here arguing, or I wouldn't be up here arguing, that nexus. But the key is, as Mr. Johnson said, is that Anthony Johnson had nothing to do with that investigation. And so there's no way that the government can bootstrap the Anthony Johnson killing into that possible federal nexus, because they're totally divorced, and one can't provide a basis for the other. The other thing I do want to just maybe touch on is the drug conspiracy, and that we agree. This is the reason we raise this as our number two issue, is that there is nothing tying these together. That if this were a so-called hub-and-spoke conspiracy with Mr. Burkhalter as the hub, well, we have our bunch of spokes, but there's no wheel. There's nothing tying these together. Well, there was evidence that Mr. Burkhalter sort of had an agreement with either named or unnamed folks to get some kind of controlled substances for sale. That evidence seemed a little stronger for Mr. Burkhalter. I think that there's kind of some amorphous kind of thought that there was something, but what was missing was the evidence really tying that together and tying it to any, I guess, identified conspirators. Did it have to be tied to an identified co-conspirator, or could the unknown and unknown do the work for the jury? There has to be something showing that there is an agreed-to overall goal, an overall scheme. If Mr. Burkhalter talked to one guy about robbing somebody or talked to another guy about getting drugs for college kids in Lawrence, that doesn't make an agreed-to overall scheme. That makes a bunch of separate discussions. I don't think that in any way certainly proves the charge conspiracy or any lesser conspiracy that could be part of that. I do want to pivot to our first issue, which is the severance issue. Mr. Burkhalter had constitutional rights to call witnesses in his own defense, to present a complete defense, and to a fundamentally fair trial. And in this case, those rights entitled him to a severance from Mr. Nesbitt. Mr. Nesbitt made clear on multiple occasions that he wanted to assist Mr. Burkhalter's defense. He did this by contacting Mr. Burkhalter's counsel, by speaking out in open court, and saying that he wanted to work with the government and that Mr. Burkhalter is innocent. And then when the district court did not let him expound on that, he wrote a letter detailing who was involved in the Dean homicide, what happened, and explaining why Mr. Nesbitt carried out the Johnson homicide. And then when Mr. Burkhalter sought to call Mr. Nesbitt at trial, Mr. Nesbitt's lawyer said that severance would have been the solution to have Mr. Nesbitt testify. In United States v. Starr, this court laid out a two-part test that applies in this situation. The first question is whether it's likely that the co-defendant will testify or would testify at a separate trial, and the second is whether the testimony would be exculpatory. On the first prong, really important is that Starr held, and Starr's progeny have held, that it's not necessary to prove to a certainty that Mr. Nesbitt would have testified. Do you need something, though, from, is this, do you need something in between sort of what happened here and maybe what happened in Starr sort of at least, there's one thing to sort of say I want to help my co-defendant, but it's another thing to sort of step up and say I want to be a witness, I'm willing to testify. What do you think the next step should have been? Was it, who should have taken the next step to maybe say here is why I'm very confident that my co-defendant not only wants to help me, but he wants to help me by testifying for me in court. Is that the court should, district court should follow up? Is that, which counsel, you know, the co-defendant's counsel, the defendant's counsel? I'm going to answer. The first thing I'd do is, Your Honor, I would respectfully take issue with the very confident, right? I don't think that's.  Your Honor said, where do we have to get to say that I'm very confident? All right. I'll take that part back. Yeah, that it's likely. There you go. I do think the district court should have taken more action here. I mean, what we have here is something where Mr. Burkhalter's counsel are put in a very difficult situation, right? Mr. Nesbitt contacts, I think the record's clear, my office, and asked to talk to me because of ethical restrictions, right? Couldn't do that. Mr. Nesbitt then spoke up in open court and said, I want to work with the government. And I think the work with the government is a very clear saying, willingness to testify. When the court cut Mr. Nesbitt off, Mr. Nesbitt, you know, and said, talk to your lawyers, and Mr. Nesbitt specifically said, can we set up a date to discuss this further? And that's where the district court, I think, really should have taken some further action, inquired of Mr. Nesbitt, ex parte, done something. But then when the court didn't, Mr. Nesbitt showed a likelihood by writing that letter. And I think the star was very clear that Lindenmeier, the co-defendant there, never said, I'm willing to testify for Mr. Starr at trial. I'm willing to waive my fifth amendment of privilege. The court inferred from the willingness to testify in the grand jury that, you know, a big leap, I suggest, to say that he would have then, after being charged and sitting there as a co-defendant, would have been willing to testify at trial. And so I think that here, to the extent there wasn't any other action that should have been taken, it should have been taken by the district court. But I think for this court's purposes, Mr. Nesbitt speaking out in court, Mr. Nesbitt writing that follow-up, those show at least a likelihood, which is all that's required under Starr. Well, what about the second? Isn't there another part about what his testimony would have been? Absolutely, Your Honor. And so on that second prong, on the exculpatory prong, I think that a question is, how does this court square Starr, which is talked about that the co-defendant's testimony would have been broadly, would have broadly stated Starr was not involved, with later cases like Benton and DeLuna, which may seem to suggest that there's some additional requirement. And I think the actual holdings of those cases answer that question. And really, DeLuna rejected a standard of completely exculpatory. And DeLuna said it just has to be substantially exculpatory, which means the testimony would do more than merely tend to contradict a few details of the government's case. And here we have something far more than that. And here we have detailed information from Mr. Nesbitt that would have been exculpatory. So this isn't like Benton where, as the district court found, the testimony would have been equivocal in nature. It's not like DeLuna where this court said it was a close call. But in DeLuna, which was the Tropicana money skimming case, the would-be testifying co-defendant was on a recording giving information that was directly contradictory. You know, not an interrogation, but on a recording with the other co-defendants giving information that was directly contradictory to the proffered testimony. And I think the court has to be careful about how far down that road it goes because at some point this becomes a jury function of judging that credibility. And here we have, you know, so whether the jury would ultimately believe what Mr. Nesbitt had to say, that is for the jury, but there is nothing so directly contradictory that Mr. Burkhalter should not have had a right to present that testimony. We do want to reserve about two minutes for rebuttal, so if the court does not have any other questions at this time, I'll reserve the remaining time for rebuttal. Thank you. Counsel, you may proceed when ready. Good morning. May it please the Court. David Wagner on behalf of the United States. I appreciate Mr. Johnson and Mr. Klein's efforts to focus the issues for oral argument today. There's a lot of ground to cover in this case, but I'll plan to focus on the same issues unless the court has questions about any of the other issues that were raised. Of course, I'm happy to answer those questions as well. But starting at the top with the witness tampering issue, one thing I think the court should keep in mind is that the standards from Fowler and the standards from this Court's Patruck decision are separate standards. They're independent theories to support the verdicts in this case. I noticed that Mr. Nesbitt's reply brief sort of combined the standards a little bit, but I would encourage the court to keep them separate. And I'll start with the official proceeding theory where the standard comes from Patruck. I think it's remarkable in this case that neither in their briefs nor here today in oral argument have either of the appellants acknowledged Section 1512G1. That's this provision that says no state of mind need be proved with respect to the circumstance that the official proceeding is a federal proceeding. The government's view is that that provision resolves this case on the official proceeding theory. The defendants did not need to believe when they killed Mr. Johnston, when they threatened Ms. Williams, or when they tampered with the AR-15 after killing Mr. Johnston, that they would be prosecuted in federal court. What Congress has required is that they anticipated a particular foreseeable proceeding, whether or not it would be state, whether or not it would be federal. There was a disputed trial, but on appeal there's really no dispute that the defendants committed the underlying federal crimes. For purposes, well, I should take that back. Mr. Nesbitt has challenged whether he murdered Danny Dean. But assuming that he committed that murder, there's been no challenge that those crimes were not federal crimes. And in fact, they were actually prosecuted in federal court. So we know the defendants committed incredibly serious federal crimes when they killed Danny Dean. They committed Hobbs Act robbery by robbing him of cocaine. They committed murder with a firearm under 924J when they shot him to death with the AR-15 rifle. They committed possession of a firearm and furtherance of crimes of violence and a drug trafficking crime when they used that firearm in furtherance of their robbery of cocaine. And they committed the crime of possessing cocaine with intent to distribute. These are all solidly federal crimes of the most serious nature. And when they found out that Anthony Johnson had been talking to the police about those federal crimes, they killed him to prevent him from providing further testimony. They didn't... Do you think it matters that there was an obvious state investigation ongoing? No state charges like in some of the cases that we have, but there was a state investigation of what had happened. I don't think it matters because even if they subjectively believed that they would be tried in state court, the statute specifically provides that that frame of mind doesn't matter. The requirement that the official proceeding be federal really goes to an actus reus element rather than a mens rea element. That's why 1512G1 is so critical. So what about our Abdullahi opinion? Are you disagreeing with the analysis in that opinion? Is your argument based on a disagreement with that opinion? To answer the latter question, no. To answer the former question, yes. We do agree with Judge Strasse's concurrence in that case, but we still think that the verdict should be upheld even under the majority's approach in that case. The big difference here, I tried to make this point in the brief, is that Abdullahi and Petruk and a lot of the other out-of-circuit decisions the defendants have relied upon involve situations where a state proceeding was already ongoing. That's the pivot point, exactly. And that's not the same as a state investigation is your position? Correct. An investigation is not a proceeding. We're not arguing that. The fact that there is a federal investigation would not be enough to satisfy a proceeding. We're not disputing that here. And in Abdullahi, the issue was because there was already a state prosecution, there was no indication that the defendant there foresaw an additional proceeding that could have been a federal proceeding. I think what Abdullahi and the other cases it relies upon sort of assume is that defendants don't anticipate being prosecuted by dual sovereigns. When they get charged by one sovereign, they think that that's where their case is going. And they don't anticipate that another sovereign is going to step in and also file charges for the same conduct. That seems to be, at least in my mind, the assumption that those cases rest upon. We don't have that issue here because there was no state proceeding at the time of the tampering activity. Of course, we also have Mr. Burkhalter's jail calls, which were referenced. Here's why I think they're important. I don't disagree that when he talked about being charged by the feds, he was talking about a different gun, a handgun that had been seized in the car, not the AR-15 rifle. What his calls show is that he knew that felony gun possession can be prosecuted federally. And if he knew he could be prosecuted federally for that .40 caliber handgun, he also necessarily knew he could be prosecuted federally for that AR-15 rifle that he and Mr. Nesbitt had used in a drug robbery and a murder. Turning to the federal officer theory, the standard here, of course, is reasonable likelihood. It's an interesting standard. I'm not sure of another area of criminal law where we have a standard like this. It comes from Fowler, of course. The important thing to keep in mind here is that for this court's review, the standard is doubly permissive. What I mean by that is the jury needed to find a reasonable likelihood that Anthony Johnson would have communicated with a federal officer. What this court needs to find is, could any reasonable juror have found that reasonable likelihood? I think that's the lens through which this court should be viewing that issue. We know from Detective Task Force Officer Wells' testimony that he was responsible as an ATF TFO for investigating gun and drug crimes. He said he was especially interested in firearms crimes with a connection to violent crime. The offense that Anthony Johnson was providing information about was felons using a firearm to rob drugs from and kill a drug dealer. These are very federal crimes, exactly the sorts of federal crimes Detective Task Force Officer Wells was interested in investigating. He knew that these crimes had occurred because he participated in an interview of Mr. Burkhalter the day Mr. Burkhalter was arrested after the car chase, along with Raytown Detective Gillespie. He was already coordinating with state authorities. It's true that he began investigating Mr. Burkhalter for that handgun, that .40 caliber handgun. But he expanded his investigation to involve drug trafficking. He listened to Mr. Burkhalter's jail calls. He heard a reference on those calls to something in the car being hidden in the steering wheel area. So he and his partner procured a federal search warrant to search that car for drugs. Of course, Anthony Johnson had information about the Danny Dean murder, but that murder also involved drugs. So there's an overlap between what Detective Wells was investigating, felony gun possession expanding into drug trafficking, and the sorts of things that Anthony Johnson had information about. Under these circumstances, well, and I should also say, Detective Wells, Task Force Officer Wells, specifically testified that he would have been interested in talking to a witness to that Dean robbery and murder. And of course, we know that Anthony Johnson had already been communicating with the police, the Kansas City police. Based on those facts, a reasonable juror could find a reasonable likelihood that had Anthony Johnson not been killed, he would have communicated with a federal officer. Unless the court has further questions about the witness tampering, I'd like to touch briefly on the drug conspiracy question that you raised, Judge Kelly. I think the thing to keep in mind here is that a drug conspiracy does not have to necessarily involve actual procurement of distribution amount of drugs. The crime, of course, is the agreement. You asked whether there's any information in the record about the amounts of drugs that were stolen, and I would point you to a couple of things. For the Dean robbery, there were text messages between Danny Dean and another person present at the scene, a guy named Cornell Brown, who he sold cocaine to, where he was asking about the price. Danny Dean was asking about the price for two ounces of cocaine. Cornell Brown said that when he met with Danny Dean in that parking lot of the Mama China restaurant shortly before Danny Dean was killed, he saw Danny Dean in possession of about half a golf ball's worth of cocaine. We know that he didn't have that volume of cocaine on him after he was killed, so presumably that's the amount that was stolen. He had smaller amounts on his body when he was killed. It seems to me that you have a conspiracy to steal from dealers, which could be a wide range of quantity. I'm just trying to get it. Maybe Mr. Burkhalter, you've got him dealing in maybe some transactions and agreements with folks to sell. But Mr. Nesbitt, I don't know. It just seems like a step. I understand you just need the agreement, but you still have to have evidence that what he was going to do was not just take it and use it, as opposed to take it, resell it. Right. So with respect to Mr. Burkhalter, what we know is that after that robbery and murder, he called his friend, and they almost consider themselves family, Marcus Johnson. He was another witness at trial. So you've got Burkhalter, sort of. Sure. What about Nesbitt? A couple things about Nesbitt. First of all, to be a member of a drug trafficking conspiracy, you don't need to personally be the one that sells the drugs. So if you facilitate the acquisition of drugs for another member of the conspiracy to sell, you're part of the conspiracy. Was that the theory? Was that what you argued to the jury? There was more than that. Did you argue that? I think we did. I don't want to commit exactly to that without re-looking at the closing argument. But whether we argued it or not, the evidence was certainly there. We also have Nesbitt's calls, where he said that all he did was sell dope. So he's on calls admitting that he's selling drugs. You wouldn't charge somebody on that, though? Not based on that alone. Obviously, if you take each of these pieces separately, maybe you don't get to a drug trafficking conspiracy, but of course we can't do that. We have to look at it as a whole. We also know that Nesbitt was involved in buying the drugs from one of Burkhalter's cocaine sources, 6-0. He would go with Jocelyn Lee, Burkhalter's girlfriend, and Mr. Burkhalter bought those drugs. Do we know about the quantity of those? They were small amounts, is what Ms. Lee testified. We know that Mr. Burkhalter was sharing those drugs with others, including other members of the conspiracy. We also know that he was selling drugs to Anthony Peltier. He's the guy that helped Burkhalter steal the AR-15 initially. He's also the guy that set up the last robbery in Lawrence to raise money for Mr. Burkhalter. Obviously, the question for this court is, could a reasonable jury find a drug trafficking conspiracy? I think when you look at the evidence as a whole, our position obviously is the answer is yes. I wanted to make another point about the quantity of marijuana taken from Anthony Johnson. We know from the jail calls that prior to Anthony Johnson's murder, Jocelyn Lee was telling Mr. Burkhalter that Anthony Johnson had weed and money. We know that, I believe what Mr. Nesbitt told Mr. Burkhalter is that Anthony Johnson had money and a pound of shit, apparent reference to Mr. Johnson's marijuana. We also know that that was enough marijuana that it could be shared among four or five people. If four co-conspirators go in and steal a certain quantity of drugs and then each take their own set of the proceeds, is that really distribution or is that just sharing? In other words, they've each just taken their own? Well, that's not what happened here. I think that might be a separate issue, but what happened here is one of the co-conspirators took the marijuana and then Mr. Nesbitt is the one who split it up and gave shares to everybody. And those people weren't the ones who went to do the robbery? Yeah, they were. They were all part of the same robbery? Yeah. I guess that's what I mean. You're all part of the same robbery, so you divide up the proceeds. Yeah, our position is that's still distribution, that's still a conspiracy. If there's no other questions about the drug conspiracy, I would like to touch on severance. I think it's important to keep in mind that severance is a discretionary decision by a district court. This court has emphasized a district court's discretion in this area. There's also a strong preference for joint trials, particularly trials of co-conspirators. And here, Mr. Burkhalter and Mr. Nesbitt were charged in two conspiracies, and they were jointly charged in 14 of the 15 offenses charged. So, to get severance on the ground that Mr. Nesbitt would testify for him, Mr. Burkhalter, of course, had to show two things. He had to show that it was likely that Mr. Nesbitt would testify, and he needed to show that Mr. Nesbitt's testimony would be substantially exculpatory. With respect to the first requirement, this court has required a firm representation that the co-defendant would testify. And the representations in this case that Mr. Burkhalter attributes to Mr. Nesbitt don't even come close. We've got the three statements that are purported to be directly from Mr. Nesbitt, and I'll assume, for purposes of this argument, that Mr. Nesbitt made all of those statements. The phone call, the letter, and the in-court outburst. All of those statements indicated a willingness to help Mr. Burkhalter, but what they did not indicate is that that willingness was contingent on severance. There was nothing in those statements indicating that I will help Mr. Burkhalter if I can testify in a separate trial. That's the key here, because Mr. Nesbitt made that phone call in July of 2020, over three years before trial. There's no indication that he maintained his desire to speak on Mr. Burkhalter's behalf at the time of trial. He made that in-court outburst nearly a year before trial, in August of 2022. He never worked with the government. There's no indication that he maintained that desire to help Mr. Burkhalter up until trial. And then the written letter, I don't know when he wrote it, that Mr. Burkhalter has never divulged where he obtained that letter, or when he obtained that letter, or how he obtained that letter. When did it come to the surface? When he filed his motion for severance. That was the first time? It's the first the government learned of that letter. But what those letters don't include is any contingency on severance. And also what those three statements don't include is any representation Mr. Nesbitt would testify. Sure, he said he wanted to help Mr. Burkhalter. What about a hearing by the district court that maybe would call in Mr. Nesbitt's attorney as well and just have a professional representation? We've got this letter. Looks like perhaps he's wanting to testify. What's the state of the situation? Right. I heard Mr. Klein make that point. I think that's a little unfair to the district court because Mr. Burkhalter never asked the district court to call in Mr. Nesbitt and examine him, to my recollection. And I also think, I don't know that the district court can do that. I don't know that the district court can require a co-defendant to represent whether or not he will testify on behalf of another co-defendant. I think that might itself infringe on the co-defendant's Fifth Amendment rights. Certainly this court's case law has never required a district court to do anything like that. And even if the court could have done it, it doesn't mean it was required to do it. I'm not necessarily suggesting anything's required here. I'm just sort of exploring how this might be shored up to a point where the district court would feel comfortable with the representation that, yep, this looks like this is going to be a problem. I'm just sort of exploring that because I'm not really sure. Yeah, well I think, here's what the district court thought in its order denying severance. It made the point that, look, both defendants have filed corresponding motions to sever. If Mr. Nesbitt is actually willing to testify on Mr. Burkhalter in a severance trial, the district court said, I would expect him to make that representation to me because they're both briefing the same issue. So the district court was looking for an affirmative step from Mr. Nesbitt's counsel and I think that was a reasonable approach to take. With regard to the remark by Mr. Nesbitt's counsel during trial, first of all, almost the entire trial had been completed by that point. That remark came towards the end of the trial. And second of all, that remark did not include any expression of Mr. It didn't say Mr. Nesbitt is willing to testify at a severance trial. I frankly don't know what it meant. I don't think anyone, the transcript doesn't reflect that anyone in the room when it was said thought it meant it carried the meaning that Mr. Burkhalter is now attributing to it. And if you just think about what this would have looked like if the court had severed the trials, what did Mr. Nesbitt have to gain from testifying? If he had testified, even if he had testified first, then all that testimony would have been used against him at his second, at his own trial. If Mr. Burkhalter had been tried first, Mr. Nesbitt had testified, that would all have been used against Mr. Nesbitt. He was never going to testify if Mr. Burkhalter went first. There's case law we've cited saying you shouldn't sequence the trials so the co-defendant can be tried first. Even if Mr. Nesbitt had been tried first, if he had admitted to all the crimes at his second trial, then we've got a situation where there's appeals from those trials, and in one appeal of Mr. Nesbitt's trial, he's saying the evidence is insufficient to convict me for these crimes, whereas at Mr. Burkhalter's trial, he provided testimony under oath saying I committed all these crimes. That's just an untenable situation, either for the district court or the court of appeals to be placed in. I see that I'm out of time. If there are no further questions, I would ask the court to affirm. Thank you very much. Your Honor, I'd like to maybe just work backwards from the points that Mr. Wagner hit. This first, the last thing that Mr. Wagner is talking about, what would Mr. Nesbitt have to gain? And I think that the Seventh Circuit and the Achelas decision, which was relied on by Starr, really addressed that. That these are not, that's not the government's objection to interpose. That whether he would have asserted a fifth, that that's a concern for Mr. Burkhalter. The... As a record matter about whether Mr. Burkhalter's counsel ever asked the court to call in Mr. Nesbitt, and I'm trying to be careful about what's in the record and what I just remember from when I was on the case. There was some litigation about Mr. Burkhalter's counsel being able to talk to Mr. Nesbitt after Mr. Nesbitt made those outreaches. And that was litigated and that was eventually denied by the district court. And then just the last point on severance, I think Starr and his projection on the first prong are clear that the first prong does not require an express statement, I will testify, that certainly was not what happened in Starr. With my last 30 seconds, on the witness tampering, Mr. Wagner really telling you to use language like Mr. Burkhalter knew it could be prosecuted federally. And that does not mean, I think, I can't remember if it was in Abdullahi that this court said, that doesn't mean that he contemplated a particular proceeding. Mr. Wagner used on the second, on the law enforcement communication, talked about federal overlap. I encourage the court to word search Fowler for the word overlap, because the Supreme Court expressly addressed that in Fowler and how that opens up the floodgates to make everything a federal prosecution. I am out of time. Unless the court has further questions, we ask that the court reverse consistent with the way we laid it out in our briefs. Thank you. Thank you, counsel. And before we move from this case, I wanted to extend the thanks of the court to Mr. Johnston and Mr. Klein for your service under the Criminal Justice Act. It's much appreciated. Thank you, your honor. All right, counsel. The arguments have been very helpful this morning. The case is submitted and opinion will be issued as soon as possible.